# FAYE V. PETERSON v. MARCIA BARTELS AND OTHERS.
## JEROME DALY AND ANOTHER, APPELLANTS.

170 N. W. (2d) 572.

September 5, 1969—No. 41514.

*Jerome Daly,* pro se, and *William E. Drexler,* pro se, for appellants.

*Dygert & Gunn, Robert W. Dygert,* and *James P. Rorris,* for respondents.

OTIS, JUSTICE.

Jerome Daly and William E. Drexler appeal from an order

denying them a new trial in an action brought by Faye V. Peterson, in which she has recovered damages of $35,500 against each appellant. The only issues are (1) whether it was error for the trial court not to recognize an affidavit of prejudice filed by Drexler; and (2) whether it was error for the court to commence trial without notifying Daly that the matter was proceeding, and without affording him an opportunity to be present when the jury was selected.

This action is the aftermath of protracted litigation involving a divorce between Faye V. Peterson and Dr. Palmer Peterson. Peterson v. Peterson, 274 Minn. 568, 144 N.W. (2d) 597; Peterson v. Peterson, 278 Minn. 275, 153 N. W. (2d) 825; Peterson v. Peterson, 278 Minn. 432, 153 N. W. (2d) 830; Peterson v. Peterson (8 Cir.) 400 F. (2d) 336. In the present litigation Mrs. Peterson alleges that Daly and Drexler, the attorneys who represented Dr. Peterson, were guilty of fraudulently concealing and diverting his assets to prevent her from receiving alimony and the property division to which she was entitled.

### DREXLER'S APPEAL

On March 21, 1968, this case was placed on a calendar call before Judge Eugene Minenko of the District Court of Hennepin County. Both Daly and Drexler answered the call and made a number of motions. At the conclusion of the hearing, the following discussion occurred between court and counsel:

"THE COURT: Gentlemen, I'm going to place this case, for the moment—I don't know that it is in actually a readiness status at this time—but I'm going to continue it in a non-readiness status until April 26th. In other words, this calendar call in this matter is continued to April 26th.

"MR. FRISCH: Does that mean there's going to be another calendar call at that time?

"THE COURT: Yes.

\* \* \* \* \*

"MR. DYGERT: May I say, so far as the intent of the Court's

order, do I understand that any motions shall be put on for hearing before April 24th so that the Court—

"THE COURT: (Interposing) They should be concluded prior to that time. In other words, they should be filed and concluded prior to that time. In other words, I am in hopes by this and with that length of time that these matters that are still hanging shall be accomplished so that essentially to that extent—and not being able, of course, to foresee everything—to that extent that the matter then perhaps at that time can definitely schedule for trial."

On April 26, Drexler appeared at Judge Minenko's courtroom and found a notice on the door directing interested parties to report to the assignment clerk for the calendar call to be conducted by Judge Tom Bergin. In response, he appeared before Judge Bergin, together with other parties and their counsel, and after a discussion of various motions advised the court that he was ready to go to trial. Judge Bergin concluded the calendar call by asking counsel, including Drexler, whether they were ready to draw a jury at 2 o'clock, to which Drexler and the others answered in the affirmative. The court then said, "Very well. 2:00 o'clock this afternoon." At 1:30 Drexler filed an affidavit of prejudice against Judge Bergin which the judge refused to honor, assigning the following reasons in so doing:

"* * * The Affidavit of Prejudice is disallowed for the reason that after assignment to this Court Mr. Drexler participated in argument on a legal motion which was determined adversely to him, and that subsequent to his appearance and argument on the motion the affidavit was filed. For that reason it is disallowed."

In response, Drexler stated that he had no notice Judge Bergin would be presiding until immediately before the noon hour on that day.

We find nothing in Drexler's participation in the motions before Judge Bergin inconsistent with his right to file an affida-

vit of prejudice. The transcript of the proceedings before Judge Minenko and Judge Bergin do not indicate that Drexler knew which judge would preside at the trial until shortly before noon that day. Although Drexler took part in selecting a jury, he withdrew from further participation in the case on the second day of the trial.

Rule 63.03, Rules of Civil Procedure, permits a party or his attorney to file an affidavit of prejudice in a multiple-judge district within 1 day after it is ascertained which judge will preside at the trial. The statement of policy adopted by the judges of the Hennepin County District Court provides in part, 27B M. S. A. p. 144:

"* * * Counsel will be allowed 10 days during which to file an Affidavit of Prejudice, after notification of assignment of a case to a Judge."

Since Drexler complied with these rules, it was error for the trial court not to disqualify himself. For that reason Drexler is entitled to a new trial.

### DALY'S APPEAL

Because he was engaged in a trial of a criminal matter on the morning of April 26, 1968, Daly did not appear at the hearing before Judge Bergin. The court at the calendar call noted that he was not present. Although Daly subsequently asserted to the court that he had instructed Drexler to act as his attorney at the calendar call, Drexler, by affidavit, confirms the fact that he did not so advise the court. Daly was not apprised of the fact that the case would be immediately sent out for trial and did not learn that it was in progress until 10 p. m. that night. The following Monday he attempted to invoke a blanket affidavit of prejudice against most of the Hennepin County bench, which the trial court properly rejected because Daly had filed a prior affidavit of prejudice and made no showing of actual bias. Thereafter, Daly attempted to make a special appearance and at the same time take part in the hearing. This the court correctly refused to

allow. Consequently Daly withdrew from further participation.

The only question is whether the order of Judge Minenko and his remarks in open court which prefaced it constituted sufficient notice to Daly that the case would go to trial at the hearing April 26. We think it did not. Significantly, Judge Minenko continued the matter for a further calendar call on a "non-readiness status." To be sure, the court expressed the hope that the case would be scheduled for trial on April 26, but his remarks fell far short of setting a day certain for hearing. Under Rules 4, 5, and 28, Special Rules, Fourth Judicial District, it appears that only when a case is placed on an "alert status" may it be sent out for trial on short notice. Rule 5(a) (2) provides as follows (Minn. St. 1967, p. 5444):

"(a) The following phrases as used in these rules shall have these meanings:

\* \* \* \* \*

"(2) 'Alert status' means that a judge, a referee or the assignment clerk has notified the parties that the case is subject to being assigned out for trial on one hour notice."

There is no showing that after Judge Bergin set the case for trial at 2 o'clock following the morning calendar call any attempt was made to notify Daly of that fact. Having failed to appear at the calendar call, Daly was in no position to object to the time designated by the court. Nevertheless, that did not deprive him of his right to notice that the matter would be heard the same afternoon. There is no claim that the assignment clerk or anyone else tried to reach him or his office until late that evening. Under these circumstances it was error for the trial court to deny Daly the opportunity to participate in selecting the jury and he is entitled to a new trial.

Reversed and remanded.